IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CALATRELLO, | ) | CASE NO. 1:05 CV 797 |
| Petitioner | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| AMERICAN CHURCH, INC., | ) | |
| Respondent. | ) | MEMORANDUM OPINION AND ORDER |

This matter is before the Court on Petitioner, Frederick Calatrello's Petition for Injunction Under Section 10(j) of the National Labor Relations Act, As Amended. Petitioner has charged that the Respondent, American Church, Inc. ("American Church") has unlawfully withdrawn its recognition of the Union as the exclusive collective bargaining representative of an appropriate bargaining unit and has failed to follow the terms of the collective bargaining unit that was in effect at the time such recognition was withdrawn. The underlying allegations of unfair labor practices were heard by an Administrative Law Judge at the National Labor Relations Board on December 8, 2004. No decision has yet been rendered by the Board.

Pending resolution of these underlying charges, Petitioner has requested that this Court (1) enjoin American Church from withdrawing recognition or otherwise refusing to bargain in good faith with the union; (2) order American Church to restore all of the rights and privileges enjoyed by the employees prior to the withdrawal of Union recognition, and (3) order American Church to rescind all unilateral changes made to the terms and conditions of unit employees from May 20, 2004 forward. American Church has opposed this motion, and both parties have fully briefed the relevant issues. For the reasons set forth below, this motion is DENIED.

I. Facts

The Graphic Communications Union, Local 638-S a/w Graphic Communication International Union, AFL-CIO ("the Union"), filed charges against American Church, Inc., on June 25, 2004, alleging that as of May 20, 2004, American Church withdrew recognition of the Union without justification and in violation of Section 8(a)(1) and (5) of the National Labor Relations Act. (Petition at 1-2; Tr. at 17). It is undisputed that the Union had entered into a Collective Bargaining Agreement with American Church,[1] which was to be effective from February 1, 2003 to February 16, 2006. (Tr. At 35; G.C. Ex. 2). The bargaining unit defined in the Agreement includes:

> all production and maintenance employees, including porters and janitors, but excludes office, clerical and professional employees, guards and supervisors as defined in the National Labor Relations Act, as amended.

---

[1] American Church has had three names in the course of its existence. At the time the Collective Bargaining Agreement was entered into, it was operating under the name of APG Acquisition Corp., d/b/a American Envelope, Inc.. (Tr. at 37, 238). The name "American Church, Inc." was adopted on or about January 7, 2004. (Tr. at 247-48.)

-2-

(GC Ex. 2, Art. II, para. 2, p.1). At the time the Collective Bargaining Agreement was entered into, American Church operated two different lines of business: the manufacture, printing, and distribution of commercial envelopes and specialty printing and distribution of church envelopes. The manufacturing, printing and distribution of commercial envelopes took place at the Southern Boulevard facility, and the specialty printing and distribution of church envelopes took place at a different facility on McClurg Ave. (See Tr. at 228). American Church entered into the Collective Bargaining Agreement with the Southern Boulevard facility employees only. (Tr. at 62-63, 255-56).

On May 1, 2003, American Church sold the commercial assets resulting in the lay-off of approximately 70 union employees. (Tr. at 312-13). The Southern Boulevard facility continued to manufacture envelopes to be sold as church envelopes. Both facilities did some printing, but each was limited to a specific printing process. If the printing was to be done on rolls of paper which were not yet formed into envelopes, that printing was done by union employees at the Southern Boulevard facility. If the printing was to be done on already constructed envelopes, that printing was done by non-union employees at the McClurg facility. (Tr. at 76-80; 333-364). On May 18, 2004, the McClurg facility was closed and the employees and operations from that facility were moved into the Southern Boulevard facility. American Church withdrew recognition of the Union on May 20, 2004. (Transcript Vol. 1, pg. 38; G.C. Exhibit 3).

II. Analysis

The Sixth Circuit has consistently used the "reasonable cause/just and proper" standard for evaluating whether an injunction under §10(j) of the National Labor Relations Act, 29 U.S.C.

§ 160(j) is warranted. See, e.g., Ahearn v. Jackson Hospital Corp., 351 F.3d 226 (6th Cir. 2003); Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26 (6th Cir. 1988); Gottfried v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 80, 927 F.2d 926 (6th Cir. 1991); Kobell v. United Paperworkers Int'l, 965 F.2d 1401, 1409 n. 3 (6th cir. 1992); Schaub v. West Mich. Plumbing & Heating, Inc., 250 F. 3d 962, 969 (6th Cir. 2001). That standard requires a district court to determine whether "(1) there is 'reasonable cause' to believe that unfair labor practices have occurred, and that (2) injunctive relief with respect to such practices would be 'just and proper.'" Schaub v. West Michigan Plumbing & Heating, 250 F.3d at 969. In order to grant a 10(j) injunction, the Court must find that both of these elements are satisfied. Levine v. C & W. Mining, Inc., 610 F.2d 432-435 (6th Cir. 1979).

### A. Reasonable Cause Determination

The Regional Director's burden for proving "reasonable cause" is "relatively insubstantial." Calatrello v. Automatic Sprinkler Corp. Of America, 55 F. 3d 208 (6th Cir. 1995). The district court is bound to accept the Regional Director's legal theories if they are "substantial and not frivolous." Fleischut v. Nixon Detroit Diesel, Inc. 859 F.2d 26, 29 (6th Cir. 1988). The district court is not required to resolve issues of fact or to determine the credibility of the witnesses, nor shall it make a determination on the merits of the case. See, e.g., Gottfried v. Frankel, 818 F. 2d 485, at 493-94 (6th Cir. 1987); Kobell v. United Paperworkers Inter., 965 F.2d 1047 (6th cir. 1992). Rather, if the Regional Director has set forth a plausible theory, supported by some evidence, the Court should find reasonable cause for an injunction under Section 10(j) of the National Labor Relations Act. See, e.g., Fleischut v. Nixon Detroit Diesel, Inc., 859 F.

-4-

2d at 29.

In determining whether a preexisting bargaining unit remains a separate and appropriate bargaining unit following a transition, the Board looks at factors including the similarity of skills, interests, duties, and working conditions between employees in the existing unit and employees in the new group; the functional integration, including employee interchange and contact; the employer's organizational and supervisory structure; the bargaining history; and the extent of union organization amongst employees. See, e.g., Armco, Inc. v. NLRB, 832 F.2d 357, 362 (6th Cir. 1987), cert denied 486 U.S. 1042 (1987). At the hearing before the National Labor Relations Board, the witnesses for the Petitioner presented evidence supporting their position that the above factors weigh against including the employees from the McClurg Road facility in the bargaining unit. If these employees were not part of the bargaining unit at the time American Church withdrew recognition from the Union then that withdrawal would have been unjustified. Although American Church also presented evidence that could show that the above factors weighed in favor of including the McClurg Road employees in the bargaining unit, this Court is not to weight the relative strength or credibility of the evidence.

American Church has also argued that the literal definition of the bargaining unit in the Union contract includes all workers whether they were originally at the Southern Boulevard facility or at the McClurg Road facility. Petitioner does not dispute that the plain language of the contract would include all of these employees in the bargaining unit. However, Petitioner has presented an argument supported by valid case law, that the contractual description of a bargaining unit is not necessarily controlling when it "no longer conforms to the reality stemming from the relocation." Comar, Inc., 339 NLRB 903 (2003); see also, Armco, Inc. v. NLRB, 832

F.2d at 362. Whether or not this legal theory carries the day, it is a viable, non-frivolous theory and is sufficient to support a finding of reasonable cause under the 10(j) standard. Reasonable cause is established under the 10(j) standard when the Petitioner presents evidence supporting a valid legal theory, and it has done so in this case.

### B. Just and Proper Determination

Finding reasonable cause is not sufficient to allow the Court to order a temporary injunction. The Court must also determine whether an injunction at this stage of the proceedings is just and proper. The proper inquiry for this determination is whether "a temporary injunction is necessary 'to protect the Board's remedial powers under the [NLRA]." Schaub v. Detroit Newspaper Agency, 154 F. 3d 276, 279 (6th Cir. 1998)(citing Calatrello v. Automobile Sprinkler Corp. of America, 55 F.3d 208, 214 (6th Cir. 1995).

Petitioner spends much of its brief arguing that American Church has not submitted sufficient evidence to prove that irreparable harm would result from the imposition of a temporary injunction. Respondent has submitted the affidavit of Ronald Plummer, the Production Manager for American Church, Inc., who has attested that a return to the status quo in effect prior to the withdrawal of union recognition by Respondent would negatively effect the efficiency and competitiveness of American Church, Inc., and would cause layoffs of union and non-union employees. Petitioner argues that these statements are not supported or sufficiently explained, and that they do not constitute evidence that an injunction would create a hardship for American Church, Inc. While admittedly vague, and disputed by petitioner, the statements of Mr. Plummer do constitute some evidence of the possible effect of an injunction in this case.

-6-

More importantly, however, the Respondent, is not required to make a showing of irreparable harm in order to avoid a temporary injunction under section 10(j). In the context of a 10(j) petition, injunctions must be "reserved for the extraordinary cases where the likelihood of ultimate remedial failure by the Board in this case is unusual when compared to the every other case before the Board." Fleischut v. Nixon Detroit Diesel, 859 F.2d 26, 30 n. 4 (6th Cir. 1988). If a final order by the Board is likely to be as effective as an interlocutory order by this Court, then the entry of an injunction in not appropriate. Gottfried v. Frankel, 818 F. 2d 485, 495 (6th Cir. 1987).

Petitioner has provided no evidence that would suggest that an interlocutory injunction is necessary in this case to preserve the Board's remedial power. There is nothing extraordinary about the circumstances of this case that would distinguish it from any other case which may appear before the Board. Petitioner has admitted that any changes to wages and benefits can be remedied through later monetary compensation without need for injunctive relief. However, Petitioner claims that there are two other issues which could not be so easily remedied by a later ruling of the Board.

Petitioner claims first that without on-going union representation, employees are at risk for harassment and the imposition of unjustified disciplinary measures. There is, however, no evidence that these problems have actually arisen. There is no evidence that American Church has failed to provide a fair and equitable grievance procedure. In fact, Mr. Plummer's affidavit attests to the fact that the union filed no grievances prior to the withdrawal of recognition, and has not attempted to file any grievances or complaints since that time. (Plummer Aff. ¶ 15). Further, any unjustified disciplinary action that may occur can be remedied by a later ruling of

-7-

the Board. Back-pay can be awarded, injunctive relief altering the employee's file to account for any inequities or reinstating an employee who may be demoted or fired may be ordered. The Petitioner has not shown that any risk of improper treatment of discipline has actually manifested, or that any such harm could not be adequately remedied by a later ruling by the Board.

The Petitioner's final argument in favor of an injunction is that the longer the Union goes unrecognized during the pendency of the Board proceedings, the Union's standing with its members is likely to erode. As evidence of this alleged harm, Petitioner has submitted the testimony of Kim Telford attesting to the fact that some members have stopped paying their dues to the Union because they no longer feel the Union is able to do anything for them. (Telford, Second Declaration, p. 9-10). Any loss of dues the Union may experience during the pendency of the Board proceedings is a monetary claim that can be remedied at the resolution of this case. As for the alleged harm to the prestige and legitimacy of the Union, there is no evidence in this case that this harm would either be irreparable or continuing if the Board eventually rules in favor of the Union. While, as the Petitioner argues, it is both predictable and understandable that members may be likely to stop paying dues to a union that is not currently recognized by their employer, and therefore, may be seen as providing no service to the employees, there is no evidence that these same members would be unwilling or unlikely to support the union if the Board eventually determines that recognition was illegally withdrawn and union benefits must be restored. Without convincing evidence that the Union's loss of support is permanent and cannot be restored if the Board orders American Church to recognize the Union and honor the contract benefits, this case presents no unique harm that would separate it from any other case before the

Board. Therefore, no injunction is warranted under the standard set by the Sixth Circuit for reviewing a 10(j) injunction request.

III. Conclusion

For the reasons set forth above, the Court hereby DENIES the Petitioner's Motion for Injunction under Section 10(j) of the National Labor Relations Act.

IT IS SO ORDERED.

                                                             /s/ Donald C. Nugent
                                                             DONALD C. NUGENT
                                                             United States District Judge

DATED: June 9, 2005